Nelson, Ch. J.
There can be no serious question in this case about the power of the legislature to modify and alter, at pleasure, the several acts incorporating the parties to this suit, as the right to do so is distinctly declared by a general statute; (1 R. S. 603, § 8, 2d ed.;) and is also specifically reserved in each of the charters. (Sess. Laws of 1832, p. 319, § 67; Sess. Laws of 1834, p. 481, § 26.)
We must assume also that the act of 1837, (Sess. Laws of 1837, p. 437,) relied on by the defendants in error as their authority for passing the ordinance in question, was passed by a competent vote to give full force and validity to it as a law. As the act is found in the statute book, we are to regard it as hav *211 ing been constitutionally enacted, there being no allegation tó the contrary upon the record. Whether we could go behind the statute book for the purpose of ascertaining if the act was constitutionally passed, provided the question were properly before us, it is not important to examine. (See Thomas v. Dakin, 22 Wend. 112, per Bronson, J.; Warner v. Beers, 23 id. 103 ; Hunt v. Van Alstyne, 25 id. 605.) (a)
The case is therefore brought down to the single question whether, upon a true construction of the act of 1837, the common council are empowered to restrain the rail-road company from propelling their cars by steam power within the corporate limits of the city. The act, taken in connection with the charter, (Sess. Laws of 1832, p. 303, § 31; Sess. Laws of 1837, p. 437, § 2,) provides that the common council shall have power to make and establish ordinances “to regulate within the bounds of the said city the grade of rail-roads, and the running of rail-road cars.” Power over the subject is given in general terms, and was doubtless intended to be broad enough to enable the public authorities to control and regulate the running of cars in a way compatible with the public interests of the city and the proper security of the persons and property of its inhabitants. A large discretion is therefore conferred upon the common council. They are to “ regulate” the running of the cars; that is, according to the ordinary acceptation of the term, to prescribe rules or laws by which the “ running” of cars within the city is to be governed; and the power may, without any strained construction, well apply to the means or force by which the cars are propelled. A right to regulate the “ running,” seems ex vi termini to imply an authority to regulate the power by which they are driven.
Looking also to the evil at which the amendment of the city charter was obviously aimed, we cannot doubt that the ordinance in question comes fairly within the provision of the act. We need no other proof of the fact than what may be de *212 rived froir our own observation and the experience of the times, that a train of cars impelled by the force of steam power through a populous city, may expose the inhabitants, and all who resort thither for business or pleasure, to unreasonable perils; so much so, that unless conducted with more than human watchfulness, the running of the cars may well be regarded as a public nuisance. It is most fit and proper, therefore, that they should be placed under the control and regulation of the city authorities; and that such authorities should possess a discretionary power to remove the danger by directing a change in the mode of impelling the train. I have no doubt such power has been conferred in the instance before us.
Bronson, J.
Immediately after the argument of this cause, I examined the records in the secretary’s office, and found that the original engrossed bill amending the city charter was duly certified as having been passed by a vote of two-thirds of the members elected to each branch of the legislature. The counsel for the plaintiffs in error were therefore mistaken in the suggestion that it was passed as a majority bill. It is of course unnecessary for us to decide whether it was our duty to look into the secretary’s office, or to determine how much force should be given to the laws as published by the state printer. On the merits, I see no reason to doubt that the court below was right.
Judgment affirmed.

 See also Purdy v. The People, (4 Hill, 384.)